Mr. Bates and Mr. Burbank for the plaintiff.

Mr. Harris for defendants.

## CHARLES COBB vs. JAMES MAKEE et al.

Rule as to the admission of a ship's log-book in evidence.

A strict compliance with the terms of a contract is generally necessary to entitle either party to enforce it against the other; but, if the non-compliance does not affect the essence of the contract—as if it be broken in respect of time or mode of its performance, when neither time nor mode of performance were essential considerations—relief will be granted.

This was an action brought to recover the sum of six thousand three hundred dollars for an alleged violation of the following contract:

"It is hereby mutually agreed by and between the undersigned, that Captain Charles Cobb, of the British barque Elizabeth Archer, shall proceed to Sydney, New South Wales, with all possible dispatch, and there take in on his own or the ship's account from 200 to 300 tons of Newcastle coals, and proceed to this port to deliver the said coals to Makee, Anthon & Co., either at this port, or to proceed to the port of San Francisco and there deliver the same as Makee, Anthon & Co. may direct, for and in consideration of twenty-one dollars per English ton of 2240 lbs.—Makee, Anthon & Co. agreeing to pay for the same as above cash on delivery. Coals to be delivered at the ship's tackles, twenty-one days allowed M. A. &. Co. to receive the coals after being notified that they are ready."

" Charles Cobb.<br>"Makee, Anthon & Co.

"Honolulu, July 3, 1850."

It appeared in evidence that immediately after the above contract, Capt. Cobb sailed for Sydney, reaching there on the 18th August; and finding that he could not procure a cargo of Newcastle coals there at any price, he set sail on the 20th of August for Newcastle, the coal port of Sydney, distant about sixty-five miles, at which port he arrived on the 22d of August. That coals being in great demand, and Newcastle crowded with ships awaiting cargoes, he was unable to load his vessel until the 18th of October, when he again set sail for Sydney, where he discharged 80 tons of coal, taken in on the

ship's account, and took in other cargo to the amount of about 150 tons. That he sailed for Honolulu on the 11th of November, and touching at Tahiti, where he landed some cargo and remained eight days, arrived here on the 6th day of February. That, on the day following his arrival, he addressed a letter to Messrs. Makee, Anthon & Co., informing them of his arrival, and tendering them 300 tons of Newcastle coals, which they refused to receive, on the ground that he had not kept his contract; and that the coals were afterwards sold at public auction for four dollars per ton.

In the course of the testimony, the counsel for the plaintiff offered the log-book in evidence, to show that the detention of the vessel was in part owing to bad weather, and other causes beyond Captain Cobb's control. The introduction of the book being objected to by defendant's counsel, it was ruled out by the Court.

"A ship's log-book," said the Court, "cannot be received in evidence, in favor of the persons concerned in making it, or others, except in cases provided for by statute ; though it may be used against any persons to whom it may be brought home, as concerned either in writing or directing what should be contained therein."

The learned counsel on both sides argued the case to the Court and jury with much ability. By the defence it was contended that Cobb had no right to vary the contract by going to Newcastle for the coals, as the agreement was to go to *Sydney*, and no where else. That if he had a right to go to Newcastle, sixty-five miles distant, he might with equal propriety go to Newcastle, England. Secondly, it was contended that he was to go—take in his coals—and return with all *"possible despatch,"* which he had failed to do, inasmuch as after lying in Newcastle nearly eight weeks, he returned to Sydney, discharged eighty tons of coals on his own account, and took in other cargo and freight for Tahiti and Honolulu. That instead of the usual voyage of four months, the Elizabeth Archer was gone seven months, during which time coals had fallen, and that owing to Cobb's delay and variation from the contract the loss should rest upon him, and not upon the defendants. It was further contended by the defence, that Cobb had no right to take in more than the coals for defendants; but was bound, when those were in, to make immediate sail for Honolulu.

Counsel on the part of plaintiff replied that, Cobb in going to Newcastle sought the best interests of all parties, as he thereby took the only possible course to obtain the coals, and shorten the voyage. That he used all possible despatch, and returned to Sydney to fill up his vessel with other goods, as he had an undoubted right to do. That agreeably with the intentions of the parties, he took in cargo of a lighter kind on top of the coals, and proceeded without delay to Honolulu, when, owing to the fall in the price of coals, the defendant refused to take them. Mr. Montgomery contended that Tahiti lay in the usual course of vessels bound from Sydney to Honolulu, as had been shown in the testimony, and that Cobb was compelled to stop there to replenish his water, which, owing to calms, head winds, and storms, had become reduced to 500 gallons. That so far from intending to stop there, Capt. Cobb, as was proved, had absolutely refused, while in Sydney, to take a passenger for Tahiti, saying that he did not intend to stop there.

CHIEF JUSTICE LEE, in charging the jury, said: The great rule to

be observed in cases like this, is to do justice between the parties, by enforcing the performance of their agreement, according to the sense in which it was mutually understood and relied upon at the time of making it.   Before deciding upon the question which of the parties has broken this contract, we must first ascertain the great object and true intent of the parties in its execution, as it may be gathered from the contract itself, and, if necessary, from the time, place, and circumstances under which it was made.   It is contended by the learned counsel for the defendants, that Cobb was bound to proceed to *Sydney*, and *there* take in coals, and that it was never contemplated by the parties that he was to go to any other place for that purpose. That the words used in the contract are precise and clear, and that his going to Sydney and *there* loading his coals, is a condition precedent, the non-performance of which precludes the possibility of Cobb's recovering in this suit.   The Court is of a different opinion on this point.   A strict compliance with the terms of a contract is generally necessary to entitle either party to enforce it against the other; but it is a well-settled principle of law, that if the non-compliance does not affect the essence of the contrct—as if the contract be broken in respect of time or mode of its performance, when neither time nor mode of its performance were essential considerations—relief will be granted.   In this case the great object and intention of the parties was to obtain Newcastle coals, and that with the least possible delay. Now, can it be reasonably urged that when Cobb arrived in Sydney, and found he could not obtain the coals at any price, that he forfeited his rights under the contract by going to Newcastle, one day's sail from Sydney, and loading his vessel?   The impossibility of buying Newcastle coals in Sydney was a contingency not anticipated by either party, and certainly Cobb should not suffer from his effort to carry out the original object of obtaining the coals, so long as his going to Newcastle promoted the interests of all parties, and shortened the voyage.   If it had greatly delayed the vessel, or if he had gone to any other place far distant from Sydney, and thereby prolonged the voyage, we should think differently.   Sydney, the place where the coals were to be obtained, was not an essential consideration with the parties; but time was.   The fluctuations of this market and that of San Francisco were all important; and the vital question in this case is, did Cobb make that despatch contemplated under the contract? Certainly when he found that he was so long delayed in Newcastle, he should have made all reasonable haste for Honolulu.   He sailed from Newcastle for Sydney on the 18th of October—reached there on the next day or the day following—discharged eighty tons of coal —took in other cargo, and did not sail again until the 11th of November.   He certainly had a right to fill his vessel, as it could not have been the intention of the parties that he should return to Honolulu half loaded; but still the question returns, did he use reasonable despatch in these operations.   Again, we find him touching at Tahiti and landing cargo.   It is said he stopped there for water, having only 500 gallons, which was insufficient to last him to this port; but Captain Moore tells us that had he been in the same situation, and desirous of making despatch for Honolulu, he thinks he would have made a reduction of the allowance and come on.   Time was essential, gentlemen, and it is for you to say, in view of all the evidence,

whether Cobb used that despatch and reasonable diligence which is required under the contract. If he did, then he is entitled to recover; if not, then your verdict should be for the defendants.

The jury, after an absence of an hour, returned into Court and rendered their verdict for the defendants, one juror dissenting.

Mr. Montgomery for the plaintiff.

Mr. Bates and Mr. Burbank for defendants.